## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDY NEAL LLC., a Florida limited liability company**<br><br>**-and-**<br><br>**ANDREW NEAL,**<br><br>**Plaintiffs**<br><br>**Against**<br><br>**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the United States,**<br><br>**Defendant** | **JUDGE TIMOTHY J. KELLY**<br><br>**Case No.** 1:19-cv-01666<br><br>**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION POSTPONING THE EFFECTIVENESS OF THE REVOCATION OF PETITION FOR NONIMMIGRANT WORKER** |

Plaintiff, Andy Neal, has applied to the Court for a preliminary injunction pursuant to 5 U.S.C. § 705, to postpone the effectiveness of the revocation of Andy Neal LLC's nonimmigrant visa petition upon his behalf to prevent him from suffering irreparable harm inasmuch as the failure to postpone these decisions will require Mr. Neal to depart the U.S. to avoid the threat of arrest, forced removal and future long term inadmissibility to the United States. Further, the plaintiffs are highly likely to succeed in this action inasmuch as the revocation decision was both not in accordance with law and arbitrary in that the petition was revoked 1) for failure to prove that Mr. Neal would be employed in an executive capacity when in fact the petition classified him as a manager; 2) on a basis which not only does not exist in the applicable regulation, but would render

a portion of it superfluous if it did; and 3) with total disregard of virtually all of the extensive evidence in the record contradicting the agency's conclusions.

## REQUIREMENTS FOR POSTPONEMENT OF THE EFFECTIVENESS OF AN AGENCY DECISION

5 U.S.C. § 705 provides that:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

It is not clear what the appropriate legal standard is for granting such a postponement. On its face, the statute seems to require only a showing that postponement is necessary to prevent irreparable harm. Some, but not all, courts have held the standard for the grant of such a postponement is the same as for a preliminary injunction. *Compare Valona v. United States*, 165 F.3d 508, 511 (7th Cir.1998) (showing of irreparable harm sufficient to have administrative order postponed) with *State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288 (6th Cir.1987) (requiring the same standards to postpone an administrative decision as for a preliminary injunction). There do not appear to be any D.C. Circuit or Supreme Court decisions setting forth the appropriate standard for postponement of the effectiveness of an administrative decision.

Although construing section 705 as requiring the same showing as a preliminary injunction appears both contrary to its plain language and to render it superfluous, even assuming that this is the standard, the plaintiffs satisfy it.

On a motion for a preliminary injunction, the district court must balance four factors: (1) the movant's showing of a substantial likelihood of success on the merits, (2) irreparable harm to

the movant, (3) substantial harm to the non-movant, and (4) public interest. *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1291 (2009).[1] As we will show, the plaintiffs easily meet each of these standards.

## BRIEF STATEMENT OF THE RELEVANT FACTS

Andrew Neal is a highly experienced and successful entrepreneur in the field of real estate sales. He began his career in the United Kingdom where from July 2000 to June 2008 he was a real estate agent and then moved up to being a Business Development Manager for Zoopia.com in London from June 2008 through October 2009 before establishing his own British-based real estate marketing company, Andrew & Co Estate Agents Limited (Andrew & Co.).  Exhibit 1 at 43. It is headquartered in Ashford, Kent, to the south and east of London and also has three additional offices in the nearby towns of Cheriton/Folkestone, New Romney, and Charing. During 2017, the company had a total turnover of over £1 million and a profit before taxation of £194,323. Id. at 37.

In May 2017, an L-1A petition was approved for Mr. Neal so that he could manage and develop Affordable Real Estate Services LLC on-site in the U.S. to ensure that operations progressed correctly and that maximum growth was achieved. Id. at 35 & 53. In the next year, he was involved the purchase of Maxim LLC, an existing and well-established real estate company in Ft. Myers, FL, ultimately creating Andy Neal LLC  to be the parent company of both Affordable Real Estate Services (name of which is now ODN Realty LLC) and Maxim. Andy Neal LLC is affiliated with Andrew & Co. in that they are both

---

[1] In *Davis* the Court noted that "(t)he Supreme Court has recently addressed the standard for a preliminary injunction. *See Winter v. NRDC*, 129 S. Ct. 365, 375 (2009) (holding that irreparable injury must be likely, 'not just a possibility'). We note that the analysis in *Winter* could be read to create a more demanding burden, although the decision does not squarely discuss whether the four factors are to be balanced on a sliding scale. *See id.* at 392 (Ginsburg, J., dissenting) ('[C]ourts have evaluated claims for equitable relief on a '"sliding scale,'" sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. This Court has never rejected that formulation, and I do not believe it does so today.')." Here as in *Davis* this Court need not decide which standard applies because plaintiff succeeds even without considering the "sliding scale" analysis of *Davenport*.

owned and controlled by Mr. Neal. Id. at 35. As of April 26, 2018 Andy Neal LLC and its subsidiaries

had 53 full time and 14 part time employees, and estimated its 2018 gross revenues at nearly $2,000,000

and its net revenues to be in excess of $150,000. Id. at 24.

On May 3, 2018 Andy Neal LLC (ANL) filed a petition to classify Mr. Neal as an L-1A

intracompany transferee to be its Executive Manager. Exhibit 1. In that petition ANL stated that:

> As Managing Director, Mr. Neal held responsibility for the following tasks during his qualifying period of employment;
> • 10% - Holding daily morning meeting with all staff to go through the objectives for the day. He later held a second meeting with managers only to discuss staff duties and responsibilities, any issues he or  the managers need to have addressed, and to set plans/targets for the day.
> • 10% - Handling accounting tasks such as paying invoices and having monthly meeting with Company accountant to discuss and plan budgets for the month.
> • 15% - Overseeing and working with Director, who reports to him, to discuss new ideas and approve marketing ideas and plans.
> • 15% - Setting targets and monitoring staff performance. Holding one-on-one as the Managing meetings with all staff once per month. Interviewing potential new staff recruits when needed.
> • 10% - Coordinating services/ products from suppliers. Regularly meeting with potential suppliers, discussing and negotiating contracts for goods and services.
> • 10% - Visiting all four of the company's branch offices often, making sure that his standards are adhered to throughout all company locations.
> • 20% - Carrying out real estate services for clients he chose to handle personally and generating new business via valuation and market appraisals. Negotiating offers made for client's  as their biggest ally during the process. Mr. Neal also spent time meeting with some clients at their property, presenting the company's available services, and negotiating contracts with clients.
> • 10% - Holding authority to serve as final reviewer for proposals/offers. Only managers handle offer negotiations. All offers being handled by his managers were passed to Mr. Neal as the ManaginDirector for review and approval prior to submitting the official offers to clients.negotiations. All offers being handled by his managers were passed to Mr. Neal as the Managing Director for review and approval prior to submitting the official offers to clients.
>
> As shown, at least 70% of his daily tasks were strictly managerial in nature, in that they were oversight duties of tasks carried out by subordinate staff through management of the subordinate managers at the business. The other 30% of his time was made up of other necessary managerial and administrative tasks.

Id. at 38-39.

On May 16, 2018 the USCIS issued a seven page "Request for Evidence" (RFE) questioning

and/or challenging virtually every material aspect of ANL's petition, Exhibit 2,  and, in particular,

requested a more detailed statement of the duties Mr. Neal would perform under the extended petition.

Id. at 5. ANL responded with a 625 page reply meticulously responding point by point to each of the

issues raised by the RFE. Exhibit 3 (summarized and outlined by the attorney cover letter at 1-6). The first page of that response prominently featured the following in a text box near the top of the page:

> **Note**: Although the petitioner's internal title for the role offered to Mr. Neal is "Executive Manager", they are filing for him because the role meets the requirements of a managerial position only, not those of an executive role or a role made up of a combination of managerial/executive duties. He will be spending the vast majority of his time on *managerial tasks*.

> Exhibit 3 at 1 (boldprinting and italics <u>in the original</u>).

This response included an more detailed statement of Mr. Neal's  job duties in the U.S. of nearly 2 full pages in length showing that "Mr. Neal spends the vast majority of his time-at least 88% - performing strictly managerial duties in which his subordinate managers and their subordinate staff report to him and carry out the non-qualifying, day-to-day basic tasks of the real estate business. With multiple subordinate managers reporting to him in both the U.S. and in the U.K., he is certainly freed up to perform solely managerial tasks." Id. at 21-23.

Clearly overwhelmed by ANL's carefully reasoned and voluminously documented reply, the USCIS had no choice but to approve the petition and extend Mr. Neal's L-1A nonimmigrant status on July 16, 2018.  Exhibit 4. However, it was far from done. Despite having already explored at length the issue of whether Mr. Neal would be employed in the U.S. in a managerial capacity in its Request For Evidence, the USCIS still issued a Notice of Intent to Revoke ANL's petition rehashing the very same issues the RFE response had already thoroughly disposed of.  The Notice began with a nearly 2 full page discourse on what a person employed in a primarily managerial or executive position did and the evidence that ANL needed to submit to prove Mr. Neal would be doing it in the U.S. Only after it made clear that ANL was required to prove over again de novo what it had just done to USCIS apparent satisfaction a few months before did the Notice comment, almost as an after thought, that an USCIS inspector had tried unsuccessfully to

contact Mr. Neal at two of the three offices at which he worked[2] and that the phone number on the form I-129 was disconnected. Id. at 3-4.

The Notice ultimately asserted that:

**Your petition** and the ASVVP[3] report lacked sufficient detail to determine whether the beneficiary's position is primarily managerial or executive, and USCIS are unable to locate any supporting documents to indicate beneficiary's duties in the current position. You need to submit additional evidence to show that the beneficiary's current employment was in a position that is managerial or executive. If you claim that above duty as managerial or executive and the beneficiary is qualified to perform the intended services in the United States, please provide us the beneficiary's marketing plans, performance targets for the company, budget planning, paperwork for new recruitment, training materials, appraisal review to all subordinates in the entity. (emphasis supplied).

Id. at 4.

It also charged, somewhat incoherently, that "During the site visit, Andy Neal LLC is merely a U.S. holding company which does not appear to be a viable service or product providing entity." (sic). Finally it concluded that "For the foregoing reasons, you have not established that the beneficiary would be employed in a primarily managerial or executive capacity in the United States." Id.

In a timely filed rebuttal,  ANL reiterated at length how Mr. Neal was employed in a managerial capacity, generally repeating and presenting again the same evidence filed with the petition and response to the RFE. It also thoroughly explained Mr. Neal's absence at 2 of the 3 worksites as follows:

Initially, Mr. Neal had intended to spend 75% of his time between MAXIM locations in Fort Myers and Bonita Beach, with the remainder of his time at his home office outside of Orlando, FL. As described in his **Exhibit** E, Mr. Neal soon thereafter realized that he would be able to better conduct oversight of his businesses if he spent more time working from Orlando than at the MAXIM offices, which are located about a three hour drive from Orlando. By conducting his oversight through Mr. Danholm and from his home office, Mr. Neal is therefore freed his time completing the managerial tasks as described above while subordinate managers and realtors day-to-day functions of a real estate business.

Exhibit 6 at 6.

Later, it continued that:

First, as previously noted, Mr. Neal was not present at the offices at the time of ASVVP's visits because he now primarily works from home in order to free up more time for his managerial and oversight duties.

[2] The Notice provided no explanation as to why the inspector didn't try the third location.

[3] Administrative Site Visit Verification Program. Id at 3.

Next, the offices were closed at the time of ASVVP's visit because "floor time" is not required for realtors and sales associates in Florida. Though real estate brokerages must maintain an office under law, the offices may not be regularly manned by employees. Rather, realtors and sales associates are more likely to be out in the field visiting properties with clients. Please refer to the letterfrom Mr. Randy J. Schwartz, an attorney who is knowledgeable in the real estate business, enclosed at Exhibit M for further explanation. Third, ASVVP was unable to contact Mr. Danholm by the phone number listed on the L-1 petition because that phone number had been cancelled in January 2019. In July 2018, Mr. Geoffrey Owen, Broker and Manager at ODN Realty, found that the phone number had been receiving mostly sales calls and that clients preferred to contact brokers and realtors by direct numbers. As a result, Mr. Danholm requested to cancel the phone service. Evidence of Mr. Danholm's contact with the phone company is enclosed at Exhibit N.

Id. at 7

Finally, citing to 8 CFR § 214.2(l)(1)(ii)(G)[4], ANL explained that "Maxim LLC and Maxim Realty Orlando are both subsidiaries of Andy Neal LLC and are both carrying out regular, systemic, and continuous provision of services. Thus,while Andy Neal LLC may be a holding company, it still meets the requirements of a qualifying organization because it isdoing business via its subsidiaries." Id. at 8.

On May 10, 2019 the USCIS issued a decision revoking ANL's petition upon Mr. Neal's behalf. Exhibit 7. After a lengthy discussion of the law and rehashing of the prior proceeding, the decision finally held that ANL failed to establish that Mr. Neal would be employed in an *executive* capacity:

> Although you submitted the beneficiary's essential daily duties with the percentage, the submitted evidence lacked sufficient detail to determine whether the beneficiary's position is primarily **executive**. Your daily calender is insufficient as they are self-generated. Your email correspondence was dated before the beneficiary's approval in his L-1 capacity. You provided the new position offering letter, dated October 3, 2018, to the foreign employee, Karen Brown; however, the beneficiary's signature is not his hand written signature. You did not provide documentary evidence to demonstrate that the beneficiary has been working claimed job description such as attending many Real Estate events and coaching courses to enable to him to achieve his target. Your supporting documents do not show how the beneficiary controls the work of other managers and professionals in the U.S. entity since July 16, 2018. In addition, you have not demonstrated in detail how the beneficiary's educations, training, and experience have resulted in your organization's management, or an advanced level of knowledge or expertise in the organization's processes and procedures. Upon review, the record is insufficient to demonstrate that the beneficiary will be  employed in a primarily *executive* capacity supervising and controlling the work of other managerial, supervisory, or professional employees.

Id. at 5 (emphasis supplied).

---

[4] 8 CFR § 214.2(l)(1)(ii)(G) provides that: "Qualifying organization means a United States or foreign firm, corporation, or other legal entity which:(1) Meets exactly one of the qualifying relationships specified in the definitions of a parent, branch, affiliate or subsidiary specified in paragraph (l)(1)(ii) of this section;(2) Is or will be doing business (engaging in international trade is not required) as an employer in the United States and in at least one other country directly or **through a parent, branch, affiliate, or subsidiary** for the duration of the alien's stay in the United States as an intracompany transferee; and (3) Otherwise meets the requirements of section 101(a)(15)(L) of the Act." (emphasis supplied).

The decision did not make any claims pertaining to the fact that  Mr. Neal was not found at 2 of the 3 work locations mentioned in the petition, that the phone number on the I-129 was disconnected or in fact anything at all pertaining to the site investigation. Nor did it hold that ANL was not a qualifying organization.  Nevertheless, the Notice concluded, immediately following its discussion of  ANL's purported failed to employ  Mr. Neal in an executive capacity, that the petition was being revoked "for the foregoing reasons".  This action ensued.

# ARGUMENT

## I.   THE PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO PREVAIL ON THE MERITS

### A. THE COURT HAS SUBJECT JURISDICTION OVER THIS MATTER.

This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et. seq.,* and the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.,* both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

### B. THE PLAINTIFFS BOTH HAVE STANDING TO BRING THIS ACTION

ANL has a legally protected interest in a decision by the USCIS on its petition upon Mr. Neal's behalf which is not arbitrary and capricious and which is in accordance with law, per 5 U.S.C. § 706(2), and the invasion of this right has caused it concrete and particularized injury in that as a result of this invasion ANL can no longer employ Mr. Neal and so cannot benefit from the expertise he previously provided it through application to its business of his over 17 years real estate

experience;   (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's revocation of ANL's petition which prevents him from working for ANL and (3) it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable ANL to employ Mr. Neal again and so benefit from his managerial services. Accordingly, ANL has standing to complain of this action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Mr. Neal likewise has a legally protected interest in a decision by the USCIS on ANL's petition upon his behalf which is not arbitrary and capricious and is in accordance with law, per 5 U.S.C. § 706(2), and this right has been invaded inasmuch as because of the improper denial of this petition his application for extension of stay has also been denied. Further, as a result of this invasion he can no longer be employed by ANL and so cannot derive the revenue he previously received from his employment nor benefit his own company with his over 17 years of real estate experience and his presence in the United States has been rendered unlawful; (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's revocation of ANL's petition which prevents him from working for ANL and (3) it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable ANL to employ Mr. Neal again and so enable him to support himself, benefit his

company and lawfully remain in the United States. Further, ANL wishes to employ

Mr. Neal in the offered position. Accordingly, Mr. Neal has standing to complain of

this action. *Lujan*, *supra*.

What is more, the fact that Mr. Neal is the beneficiary rather than the petitioner

in this instance by no means deprives him of standing. As the D.C. Circuit Court of

Appeals said in finding that the beneficiary of a labor certification filed by a potential

employer had standing to seek judicial review under the Administrative Procedure

Act (APA) of its denial, even though the prospective employer was not a party to the

action:

> neither the statute's text, structure, nor legislative history supplies the requisite "clear and convincing evidence" of a preclusive purpose. *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967); *see also Shook v. District of Columbia Fin. Responsibility & Management Assistance Auth.*, 328 U.S. App. D.C. 74, 132 F.3d 775, 778-79 (D.C. Cir. 1998). Unlike in *Block v. Community Nutrition Inst.*, 467 U.S. 340, 348, 81 L. Ed. 2d 270, 104 S. Ct. 2450 (1984), for example, where the statute itself set forth a regulatory regime that omitted mention of certain parties, giving rise to an inference that those parties were precluded from litigating in court, *see Block*, 467 U.S. at 349, there is no indication here that Congress itself considered the mechanism by which the Secretary of Labor would make labor certification decisions, or how (and at the request of whom) such decisions would be reviewable in the federal courts. And while the legislative history indicates that Congress intended to restrict further the admission of alien workers when it amended the statute in 1965, *see* S. REP. No. 748, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S. CODE CONG. & ADMIN. NEWS 3328, 3333, that does not speak to the question whether the class of aliens deserving of admission under the statute have standing to challenge in court the Secretary's decision to the contrary. The regulatory regime is completely a creation of the Labor Department's regulations, and under the Administrative Procedure Act, it is only statutes, not agency regulations, that can preclude otherwise available judicial review. *See* 5 U.S.C. §

701(a)(1); *Gladysz*, 595 F. Supp. at 53-54. In light of the presumption of judicial review, *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986), we cannot conclude (despite our suspicions) that Congress intended to preclude the alien from challenging labor certification denials without the alien's employer. *See Block*, 467 U.S. at 351 (holding that, where substantial doubt about congressional intent exists, the general presumption favoring judicial review is controlling).

*Ramirez v. Reich*, 156 F.3d 1273, 1276 (1998)

Here likewise neither the INA's text, structure nor legislative history supplies the requisite "clear and convincing purpose" of an intent to preclude the beneficiary of a nonimmigrant visa petition from seeking judicial review of a denial. For example, there is no indication here that Congress itself considered the mechanism by which the USCIS would make nonimmigrant visa petition decisions, or how (and at the request of whom) such decisions would be reviewable in the federal courts. And even if there were legislative history indicating that Congress intended at one point or another to restrict further the admission of alien workers[5], that does not speak to the question of whether the class of aliens deserving of admission under the statute have standing to challenge in court the USCIS's decision to the contrary. The regulatory regime under which the referenced petition and application for extension of stay was denied is completely a creation of the USCIS's regulations,

---

[5] The history of the Act is one of a forward and back swinging between liberalizing and restricting the admission of foreign workers. *See generally* Gordon, Rosenfeld and Yale-Loehr, 1 *Immigration Law and Procedure* CHAPTER 2. .

and under the Administrative Procedure Act, it is only statutes, not agency regulations, that can preclude otherwise available judicial review. Accordingly, here as in *Ramirez*, this Court has no basis for concluding that Congress intended to preclude the beneficiary of an application for immigration benefits filed by his prospective employer from seeking judicial review of a denial of the same without said employer. *See Block*, 467 U.S. at 351 (holding that, where substantial doubt about congressional intent exists, the general presumption favoring judicial review is controlling). Accordingly, it is not surprising that every Court of Appeals which has reached the issue of whether the beneficiary of an employment-based visa petition (or labor certification) had standing to seek judicial review of its denial has concluded that the beneficiary did. *Mantena v. Johnson*, 809 F.3d 721, 731-33 (2d Cir. 2015), *Kurapati v. United States Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255, 1259-61 (11th Cir. 2014), *Patel v. United States Citizenship & Immigration Servs.*, 732 F.3d 633, 635-38 (6th Cir. 2013), *Taneja v. Smith*, 795 F.2d 355, 358 n.7 (4th Cir. 1986), *Stenographic Machines, Inc. v. Regional Administrator for Employment and Training*, 577 F.2d 521 (7th Cir. 1978).

Accordingly, both plaintiffs have standing to bring this action.

## C. PLAINTIFFS ARE NOT REQUIRED TO EXHAUST ANY ADMINISTRATIVE REMEDIES PRIOR TO BRINGING THIS ACTION

. "(T)here is no statutory requirement that a petitioner exhaust its administrative remedies before filing suit in United States District Court, and the 'Supreme Court has recognized that, in cases governed by the [APA], section 10(c) of the APA, 5 U.S.C. § 704, . . . limits the discretion of courts to impose exhaustion requirements." Darby *v. Cisneros,* 509 U.S. 137, 153, 113 S. Ct. 2539, 125 L. Ed. 2d 113 (1993);". *EG Enters. v. Dep't of Homeland Sec*., 467 F. Supp. 2d 728, 732 (E.D. Mich. 2006) (finding a failure to appeal a denial of an H-1B petition to the Administrative Appeals Office no bar to action for judicial review of the same). **Further**, Mr. Neal, as the beneficiary of the petition, had no right to administratively appeal USCIS's revocation of his employer's petition to classify him as an L-1A nonimmigrant. Therefore this action is not barred due to either plaintiffs failure to exhaust their administrative remedies.

**D.** THE REVOCATION SHOULD BE HELD UNLAWFUL BECAUSE IT WAS BOTH ARBITRARY AND NOT IN ACCORDANCE WITH LAW

1. THE REVOCATION WAS ARBITRARY BECAUSE ITS FINDING THAT MR. NEAL WOULD NOT BE EMPLOYED IN AN EXECUTIVE CAPACITY WAS IRRELEVANT TO ANL'S PETITON TO EMPLOY HIM IN A MANAGERIAL CAPACITY

As demonstrated above, ANL had made it unmistakably clear in its response to the RFE that it was petitioning for Mr. Neal in a managerial capacity. Exhibit 3

at 1. Nevertheless, USCIS premised its revocation upon the claim that Mr. Neal would not be employed in an *executive* capacity. Exhibit 7 at 5. Inasmuch as the petition was filed to employ Mr. Neal in a managerial capacity, whether he would be  employed in an executive capacity is irrelevant, and so arbitrary. *See North Carolina v. EPA*, 382 U.S. App. D.C. 167, 201, 531 F.3d 896, 930 (2008) ("The SO[2] regionwide caps are entirely arbitrary, since EPA based them on irrelevant factors like the existence of the Title IV program").

But even if one reads the Notice's final conclusory assertion that "for the foregoing reasons, you have not established that that (sic) the beneficiary would be employed in a primarily managerial or executive capacity in the United States", Exhibit 7 at 5, as an actual finding that Mr. Neal would not be employed in a managerial capacity,  it is arbitrary and capricious because it is based solely upon ANL's purported failure to prove that he would be employed in an executive capacity and therefore unsupported by substantial, or in fact any, evidence. *Association of Data Processing Serv. Orgs. v. Board of Governors*, 240 U.S. App. D.C. 301, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J).

## 2. THE REVOCATION WAS NOT IN ACCORDANCE WITH LAW IN THAT IT WAS NOT PREMISED UPON ANY BASIS AUTHORIZED BY THE APPLICABLE REGULATION, AND IN FACT IS IRRECONCILABLE WITH IT

Revocation of L-1A petitions are solely authorized by 8 C.F.R. § 214.2(l)(9)(iii), which provides that:

(A) The director shall send to the petitioner a notice of intent to revoke the petition in relevant part if he/she finds that:

(1) One or more entities are no longer qualifying organizations;

(2) The alien is no longer eligible under section 101(a)(15)(L) of the Act;

(3) A qualifying organization(s) violated requirements of section 101(a)(15)(L) and these regulations;

(4) The statement of facts contained in the petition was not true and correct; or

(5) Approval of the petition involved gross error; or

(6) None of the qualifying organizations in a blanket petition have used the blanket petition procedure for three consecutive years.

None of these grounds include the stated basis for denial, that being that the petitioner has not established that the beneficiary would be employed in a primarily managerial or executive capacity in the United States. In fact none of the specified grounds for revocation even refer to the employment of the beneficiary except subclause (2) ("The alien is no longer eligible under section 101(a)(15)(L) of the Act;"). But nowhere in the Notice is it so much as asserted that Mr. Neal is "no longer" eligible under that section or any other.

"No longer" means "not now as formerly". Mun. Gas Auth. v. Teton Fuels Mid-Georgia, LLC, No. 1:06-CV-186-JTC, 2008 WL 6690030, 2008 U.S. Dist. LEXIS 104580, at *33 (N.D. Ga. Mar. 26, 2008), quoting the Oxford English Dictionary (2d ed. 1989).  To conclude that Mr. Neal was "no longer" eligible under section 101(a)(15) of the Act, USCIS would necessarily be required to find some kind of change in his employment or the petitioner. This the agency did not do.

 Rather, the USCIS simply found that ANL had failed to prove a second time to its satisfaction that Mr. Neal qualified under section 101(a)(15)(L) or, in short, that it was wrong to have approved this petition in the first place.   Such a finding is not only inconsistent with the plain meaning of the phrase "no longer", but also is contrary to the obvious intent of the Secretary of Homeland Security in drafting this regulation, in that it renders subclause (5) of the same superfluous.

By providing in § 214.2(l)(9)(iii)(A)(5) that a petition may be revoked if "Approval of the petition involved gross error", the Secretary of Homeland Security unmistakably expressed his intent that a petition could not be revoked by of simple or ordinary or any other form of error less egregious than "gross".

By holding that Mr. Neal did not qualify under section 101(a)(15)(L) without finding that there had been any change from the time the petition was approved, the USCIS effectively revoked this petition because it found that its prior approval was in error.  Such a finding, if allowed to stand, would render subclause (5) of that regulation superfluous, in that if a petition may be revoked for simple or ordinary error, there would be no need for a subclause permitting it to be revoked for gross error.

"Regulations, like statutes, are interpreted according to canons of construction. Chief among these canons is the mandate that 'constructions which render regulatory provisions superfluous are to be avoided.'"  Matter of Castro-Tum, 27 I. & N. Dec. 271, 287 (B.I.A. May 17, 2018), quoting Black & Decker Corp. v. Comm'r of Internal Revenue, 986 F.2d 60, 65 (4th Cir. 1993), quoting Hart v. McLucas, 535 F.2d 516, 519 (9th Cir. 1976)). "There would be no need to provide that immigration judges "may" administratively close specific cases if they already possessed the discretionary power to do so." Castro-Tum, 27 I & N. Dec. at 287.

Here if an L-1A petition could be revoked upon a showing that the beneficiary did not now qualify for that classification, without showing that any change had occurred since the petition was approved, or, in other words, upon proof merely that the petition had been approved in (not necessarily gross) error,

then there would never be any reason for the agency to allege or prove that the

petition had been approved in gross error, and subclause (5) would be superfluous.

3. The bases upon which the decision found that ANL failed to prove that Mr. Neal was employed in an executive capacity are arbitrary because  they are  conclusory and/or failed to consider extensive contradictory evidence in the record.

The decision to revoke ANL's petition because "the record is insufficient to demonstrate

that the beneficiary will be  employed in a primarily executive capacity supervising and

controlling the work of other managerial, supervisory, or professional employees", Exhibit 7 at

5, appears premised upon two findings, first, that Mr. Neal's job description "lacked sufficient

detail", and second, that "Your supporting documents do not show how the beneficiary controls

the work of other managers and professionals in the U.S. entity". Exhibit 7 at 5.  Both of these

assertions are arbitrary.

a. The finding that ANL failed to prove that Mr. Neal would be employed in an executive capacity because his  job description "lacked sufficient detail" was arbitrary because it was conclusory

The USCIS's holding here that ANL's over two pages of job description  " lacked sufficient

detail to determine whether the beneficiary's position is primarily executive"  cannot be distinguished from the

decision reviewed **in** *Butte Cty. v. Hogen*,  613 F.3d 190 (D.C. Cir. 2010), where the D.C. Circuit Court of Appeals

found that an agency's denial of an *in forma pauperis* request, challenged as being arbitrary and capricious,

would have been insufficient, standing alone, because the conclusory declaration that the requestor's

affidavit of indigency was "inadequately supported" did not explain why the agency regarded the

request as unsupported and was not "'self-explanatory,' …from the statement's context. So too the

claim that ANL's over 2 page job description "lacked sufficient detail" " did not explain why the

USCIS regarded the job description  as insufficiently detailed and was not "'self-explanatory,' …from the statement's context.[6] It was therefore conclusory, and so arbitrary.

b. The claim that ANL's supporting documents do not show how Mr. Neal controls the work of other managers and professionals in the U.S. entity is arbitrary because it ignores contradictory evidence.

The author of the Notice of Revocation shows no sign of having even read, much less actually considered, Mr. Neal's  5 page Statement  of April 12, 2019, Exhibit 6 at 206-2010, in which he explains in elaborate detail how he controls the work of at least one manager, Bent Danholm:

> I still oversee operations on a daily basis with constant communication with Bent Danholm, either by phone. email, but mainly in person. We see each other on an almost daily basis when we discuss management operations. We conduct weekly formal meetings to discuss our strategies and plans and share ideas moving forward. Minutes of such meetings are  included for evidence along with phone records highlighting frequent calls with Bent Danholm. As well as structured meetings we often see each other on a daily basis, even if we are just doing our own tasks in the office with no set agenda, it means we are there to discuss anything that comes up and I can oversee Bents work in person. We will also occasionally meet at Geoffrey Owen's office to discuss ideas and strategies. The constant communication between myself and Mr Danholm is critical to the business as it keeps me in touch with our agents and managers daily via Mr Danholm, withouthaving to do the low level tasks not suited to a high level manager, but oversee the tasks via Mr Danholm

Id. at 207

Mr. Neal even  described  an actual meeting with Mr. Danholm on January 3, 2019. Ibid. at 208. One could hardly ask for a more detailed description of the supervision process but this discussion goes completely ignored by the decision. Not only that but, the decision also completely ignores two letters, totaling 12 pages,  from Matthew Skipper, Director of Andrew & Co (UK), describing Mr. Neal's oversight of the UK entity, Exhibit 6 at 226-237, in which he specifically describes how Mr. Neal continues to control managers in the UK even while working in the U.S., e.g. "Holds daily morning meeting via phone conference call with all staff to go through the objectives for the day. He later holds a second phone meeting with managers only to discuss staff duties and responsibilities, any Issues he or the managers need to have addressed,

---

[6] While the paragraph containing this conclusion also rejects some small pieces of evidence for various illogical pretexts, it does not even attempt to explain at all why Mr. Neal's extensive job description "lacked sufficient detail".

and to set  plans/targets for the day." Id. at 226. Such a wholesale disregard of relevant evidence makes a decision

arbitrary. See, e.g., Genuine Parts Co. v. EPA, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore

evidence contradicting its position." (quoting Butte Cty. v. Hogen, 613 F.3d 190, 194, 392 U.S. App. D.C. 25 (D.C.

Cir. 2010)) and Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs., 2018 U.S. Dist. LEXIS

196284, *23

## CONCLUSION

Inasmuch as this petition was revoked on grounds which are both arbitrary

and not in accordance with law, it is substantially likely the plaintiffs will prevail

in this action and that the decision to revoke ANL's petition will be held unlawful

and set aside.

## II.   MR. NEAL WILL SUFFER IRREPARABLE HARM IF THE EFFECTIVENESS OF THE DECISION REVOKING ANL'S PETITION IS NOT POSTPONED

As a result of USCIS's decision to revoke ANL's L-1A petition upon his

behalf, Mr. Neal is without lawful immigration status and so present in the United

States in violation of the law. This state of affairs leaves Mr. Neal suffering harm

that is "certain and great," as he is without legal status at this moment and could, by

law, be placed in removal proceedings at any time.  If Mr. Neal is forced to leave,

he will be uprooted from his job, home, and community for an undetermined length

of time." Ruiz-Diaz v. United States, No. C07-1881RSL, 2008 U.S. Dist. LEXIS

79217, 2008 WL 3928016, at *2 (W.D. Wash. Aug. 21, 2008) (holding that "halting

the accrual of unlawful presence time and/or unauthorized employment for . . . class

members" would "prevent irreparable harm to class members and their families"). This is time Mr. Neal would never get back, and a disruption to his life that could never be remedied, even if he were ultimately permitted to return to the United States after prevailing in this case. The harm is thus beyond remediation. See Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs., 2018 U.S. Dist. LEXIS 196284, *35-36, 2018 WL 6047413 (D.C.D.C. Nov. 19, 2018). Cf. Sagarwala v. Cissna, 2019 WL 1649943, 2019 U.S. Dist. LEXIS 64980, *6 ("Here, Sagarwala's claimed injuries all arise out of economic harm; her motion does not allege that she is now legally prohibited from residing in the United States. Cf. Stellar IT, 2018 U.S. Dist. LEXIS 196284, 2018 WL 6047413, at *11 (finding that plaintiff who was, as a result of H-1B denial, "without legal status at this moment and could, by law, be placed in removal proceedings at any time" had established irreparable harm).").

## III.   DEFENDANT WILL SUFFER NO HARM FROM THE GRANT OF POSTPONEMENT

Further, the balance of equities tip strongly in the plaintiffs' favor in that although they will suffer irreparable harm if the effectiveness of the denials  is not postponed, if there is any harm to the defendant at all, it is minimal. *See Ortega-Peraza v. Ilchert*, No. C-92-4972 MHP, 1993 U.S. Dist. LEXIS 2195, at

*15 (N.D. Cal. Feb. 26, 1993) ("On the other hand, the burden on the defendants that would result from prohibiting their withholding of employment authorization from Ortega-Peraza is minimal."). Here postponing the effectiveness of the revocation of ANL's petition  does not even put the defendant to the minimal burden that would have been imposed upon it by requiring it to grant employment authorization to Mr. Ortega-Peraza. In fact the proposed postponement literally requires the defendant to do nothing, and so imposes no harm upon it whatsoever.

## IV.   THE PUBLIC INTEREST FAVORS POSTPONEMENT

Finally, the public interest favors a postponement of the effectiveness of the denial of the decisions as there is a public interest in just judgments. *Arizona v. Washington*, 434 U.S. 497, 510 (1978). Since a failure to postpone the effectiveness of these decisions is likely to cause Mr. Neal to leave the country before the case is completed, either to avoid the unlawful presence bar, avoid arrest and prolonged detention, or simply to avoid starvation, thereby mooting this lawsuit before the defendant's unjust judgment in this matter is replaced with a just one, accordingly the grant of a postponement is in the public interest.

## CONCLUSION

This Court should postpone the effectiveness of the revocationof ANL's petition for nonimmigrant worker. The Court's order should also indicate that the postponement is effective the date of the revocation so that Mr. Neal will not suffer any accrued unlawful presence.

Respectfully Submitted this 10th day of June, 2019.


/s/ *Michael E. Piston*
Michael E. Piston  (MI 002)
Attorney for the Plaintiffs
225 Broadway, Suite 307
New York, NY, 10007
Ph: 646-845-9895
Fax: 206-770-6350
Email:michaelpiston4@gmail.com

CERTIFICATE OF SERVICE

I certify that the foregoing was served upon the defendant in this action today by UPS next day delivery service at the following addresses:


United States Citizenship and Immigration Services
c/o Civil Process Clerk
United States Attorney's Office
 555 4th St NW, Washington, DC 20530

United States Citizenship and Immigration Services
c/o  Attorney General
US Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530

United States Citizenship and Immigration Services
20 Massachusetts Ave NW
Washington DC 20529

/s/ Michael E. Piston
Michael E. Piston  (MI 002)
Attorney for the Plaintiffs
225 Broadway, Suite 307
New York, NY, 10007
Ph: 646-845-9895
Fax: 206-770-6350
Email:michaelpiston4@gmail.com
Dated: June 10, 2019